## COMSTOCK and another *against* HADLYME ECCLESIASTICAL SOCIETY.

On an appeal from a decree of probate establishing a will, the burden of proof as to the capacity of the testator, rests upon the party claiming under such will; who is, therefore, entitled to go forward on the trial.

But it seems, that as the right of a party to go forward on the trial, is subject to the discretion of the court, and an error in the exercise of such discretion does not affect the justice of the verdict, such error is not ground for a new trial.

An executor who has accepted the trust and acted under the will, but derives no beneficial interest under it, is a competent witness to establish it.

It seems, that executors, generally, are not liable to costs on appeals from probate.

At any rate, executors are not liable to costs, where they have been cited *New-London,* in, on the appeal, but have not appeared to defend.    *July, 1830.*

An executor, acting *bona fide,* in the due performance of his duty, is not dependent for remuneration of his services and expenses, on the final establishment of the will; and therefore, has no interest, on that ground, in procuring its establishment. *and therefore is a competent witness —*

Comstock
*v.*
Hadlyme.

Where declarations of the testatrix, tending to shew importunity and undue influence, made *about* the time of executing the will, were given in evidence; it was held, that such declarations were admissible only to shew the testatrix's state of mind, and not to prove the *facts* stated.

Where the court, in a case involving the testamentary capacity of the testatrix, instructed the jury, that if she knew what she was about, and the consequences of what she was doing, and had sufficient capacity to make a contract, she was capable of making a valid will; it was held, that this direction was substantially correct.

A mistake in drafting a will, does not render it void.

Therefore, where a testatrix, intending to give a legacy of 100 dollars, to each of her grand-children, instructed the scrivener to insert such legacy in her will, and executed the will, supposing that it had been duly inserted, when the scrivener, through mistake, had omitted the amount; it was held, that such mistake did not render the will void.

THIS was an appeal from the decree of the court of probate for the district of *East-Haddam,* establishing the will of *Charity Parmelee,* deceased. The appellants were *Samuel P. Comstock,* and *Ann Comstock,* grand-children of the testatrix; and the ecclesiastical society of *Hadlyme* were cited and appeared as appellees.

After directing the just debts and funeral expenses of the testatrix to be paid, the will proceeded thus: " Likewise, I give and bequeath to each of my two grand-children *Samuel P. Comstock* and *Ann Comstock,* children of my daughter *Anna Comstock,* deceased, to be by them respectively received, together with such interest as shall, in the mean time, have accrued thereon, at the times of their respectively arriving at the age of twenty-one years; and in case either of said legatees shall die under that age, I direct the legacy herein given to such legatee so dying, to be paid to the survivor of them, at the time such survivor shall arrive at the age of twenty-one years; and in case both of my said legatees shall die under the age of twenty-one years, my will is, that both of said lagacies be considered as falling into the *residuum* of my estate," &c. The testatrix then made some provison for the support of a brother and sister, and concluded thus:

"Likewise to the *Hadlyme Ecclesiastical Society,* meaning the society of the *Presbyterian* denomination, whereof the Rev. *Joseph Vaill* is now minister, I give, bequeath and devise all the rest and residue of my estate, of every kind and description whatsoever; which I do order and direct to be and remain a permanent fund for the support of the gospel ministry therein; the interest and profits accruing from the same to be applied to and expended for that purpose, from time to time, as said society shall direct."

The appellants assigned the following reasons of appeal: 1st, That *Charity Parmelee* never signed, sealed and published the instrument in question as her last will and testament.

2ndly, That at the time of making that instrument, she was not of sound mind, but was deranged in her intellect, and a lunatic; and by reason of her unsoundness and derangement of mind, was incompetent to make any valid will.

3rdly, That the appellants are her grand-children and only heirs at law, and were the objects of her bounty, and were by her intended to be devisees and legatees of all her estate, until by undue influence exercised upon her, when her mind had become weak and enfeebled, she was induced to consent to a bequest to *Hadlyme* society of the residue of her estate, after making by her will a certain provision for her said grand-children; which provision, it was represented to her, and she, at the time of executing the will, supposed to be inserted therein, but by mistake of the scrivener who wrote the will, such provision for the appellants was omitted, and no provision was made for them; which omission and mistake never became known to her; and so the writing in question was not her last will and testament.

These allegations were traversed, by the appellees; on which issue was joined, and put to the jury.

The cause was tried at an adjourned term in *New-London* county, in *January,* 1830, before *Peters,* J.

On the trial of this cause to the jury, the appellants claimed, that they were entitled to go forward in the exhibition of testimony, and to open and close the argument. The appellees opposed this claim, insisting that the right belonged to them. The court overruled the claim of the appellants, and permitted the appellees to go forward in the trial of the cause.

In the course of the trial, the appellees offered the executors named in the will as witnesses to the matters in controversy;

they having previously accepted the trust and given bonds ac- <span>New-London, July, 1830.</span> cording to law, and being then actually engaged in the settle- ment of the estate under the will.  The appellants objected to <span>Comstock v. Hadlyme.</span> their competency ; but the court admitted them.

It having been proved, that the testatrix had, for more than ten years prior to her decease, belonged to the *Baptist* society in *East-Haddam ;* and her declarations about the time of mak- ing her will, having been proved, that the *Hadlyme* socie- ty, or the *Presbyterians*, were about her, as thick as bees, to get her property ; the appellants claimed, that these declara- tions were to be regarded by the jury, as evidence of the facts thereby asserted ; but the court decided, that such declarations could be used for no other purpose than to prove the state of mind of the testatrix as to sanity or insanity.

The appellants further claimed, that to render a last will and testament valid, the testatrix should, at the time of its execu- tion, have a disposing mind and memory, so as to be able to make a disposition of her property with understanding and reason.  But the court charged the jury, that if the testatrix knew the consequences of what she was doing, when she made her will ; if she knew what she was about ; if she had sufficient capacity to make any contract ; she was of a sufficiently sound mind to make a valid will.

It having been admitted, that the testatrix gave directions to the scrivener who wrote the will, to insert therein a legacy of 100 dollars to each of the appellants, they being her only heirs at law, but, by mistake of the scrivener, the amount of such leg- acies was wholly omitted ;  and that she signed and published the will, supposing that such legacies were inserted therein ; and that such omission never came to her knowledge ; the ap- pellants claimed, and prayed the court to instruct the jury, that upon these facts, the instrument in question was not the last will and testament of *Charity Parmelee.*  But the court omit- ted so to charge the jury.

The appellees obtained a verdict ; and the appellants moved for a new trial.

*Isham* and *Strong*, in support of the motion, contended, 1. That the appellants should have been permitted to go forward in the proof and in the argument.  The sanity of a testator is presumed until the contrary is shewn ; and the burden of proof

New-London,
July, 1830.

Comstock
v.
Hadlyme.

is cast upon those who impeach his understanding.  3 *Stark. Ev.* 1702.

2. That the executors were not competent witnesses to establish the will.   In the first place, they *may* be liable for costs ; and if so, they are interested, although costs are not usually taxed against them.   Secondly, if not interested before the acceptance of the trust, after they have accepted it, and acted under it, they become interested to support the will, under which they are entitled to their compensation for their services rendered.   *Curtis* v. *Northup, Swift's Ev.* 357. (appx.) Thirdly, they are inadmissible under the general rule excluding parties on the record, whether parties in interest or not.

The cases on this subject may be classed, with reference to the circumstances under which the question of competency arose, as follows.   First, where the executor was a subscribing witness, and the question was, whether he was a credible witness within the statute ; and as this relates to the time of attestation, he has been held competent.  *Hawley* v. *Brown,* 1 *Root* 494.   *Sears* v. *Dillingham,* 12 *Mass. Rep.* 358.   *Bettison* v. *Brumley,* 12 *East* 250.   *Phipps* v. *Pitcher,* 6 *Taun.* 220.   Secondly, where the probate of the will *generally* has not been depending, but only in the action on trial ; there too the executor has been considered a competent witness.  *Goodtitle* v. *Welford, Doug.* 139.   But thirdly, where the *general* probate of the will has been depending, after his acceptance of the trust, the executor has uniformly been excluded.   *Hayden* & ux. v. *Loomis,* 2 *Root* 350.   *Durant* v. *Starr,* 11 *Mass. Rep.* 527.   *Sears* v. *Dillingham,* 12 *Mass. Rep.* 358.   *Vansant* v. *Boileau,* 1 *Binn.* 444.

3. That the declarations of the testatrix as to the importunity used to induce her to make this will, are evidence of the *fact* against those who claim under it.

4. That that part of the charge, which prescribed the test of the testatrix's capacity to make a will, was incorrect.   That she had sufficient capacity to render her accountable for her acts *criminaliter,* did not establish her capacity to make a valid will.   3 *Stark. Ev.* 1703. & seq. 4 *Bla. Comm.* 24. note 2. by *Chitty.   Swinb.* 72.   *Pawlet's* case, 6 *Co.* 23.

5. That the scrivener having written the will contrary to the instructions of the testatrix, and she having executed it as written, and having died without ever knowing that it was so drawn, the instrument is not her will, and is not entitled to pro-

New-London,
July, 1830.

Comstock
v.
Hadlyme.

bate. The probate of a will is not ascertaining merely, whether the instrument is executed with the prescribed formalities, and by one having capacity to devise; but also, whether it contains her *will* or *desire*, as to the disposal of her estate; and if, through mistake or fraud, this is not the case, the court will not carry it into execution. The estate will then be disposed of according to law. A will drawn contrary to the instructions of the testator, and executed under an impression that it was conformable to them, is void; and this for the reason suggested, that it does not express the intention of the signer. *Downhall* v. *Catesby, Moore*, 356. Upon the same principle, it has been held, that if a will be *defective* and ineffectual as to any material part of the estate *intended* to be devised or bequeathed, it cannot be allowed as a will of the other part of the estate; because in distributing one's estate, each devise and bequest is, in some measure, the condition of every other. *Osgood* v. *Breed*, 12 *Mass. Rep.* 525. This will is palpably defective; and this appears upon inspection. It is certain, that the testatrix intended to give each of her grand-children *something*—a " *legacy*"—and it is equally certain, that what she intended to give them, she did not intend the residuary devisees should have.

To escape from the alternative of defeating the intent of the testatrix, or declaring the will void, it would be necessary to resort to parol evidence to correct the mistake; but this would contravene a fundamental rule of evidence, as well as the statute regarding wills. Lord *Cheyney's* case, 5 *Co.* 68. *Mann* v. Executors of *Mann*, 1 *Johns. Chan. Rep.* 235. and cases cited *ibid.* *Avery* v. *Chappel*, 5 *Conn. Rep.* 270. Stat. 199. *tit.* 32. *s.* 2.

*Goddard* and *Waite*, contra, contended, 1. That it was the right of the appellees to go forward in the trial of the cause. When a suit is brought to the superior court, by appeal, it is to be proceeded with, in the same manner, as though it had been brought there directly, without having been before any inferior tribunal. Those who claim under the will, are as much bound to establish it, in the superior court, after the appeal, as they were before the appeal, in the court of probate. They take the affirmative. The burden of proof, consequently, rests upon them; and they are to go forward in discharging that burden. *Buckminster* v. *Perry*, 4 *Mass. Rep.* 593. *Phelps* v.

*New-London,*
*July, 1830.*

Comstock
*v.*
Hadlyme.

*Hartwell,* 1 *Mass. Rep.* 71. *Blaney* v. *Sargeant,* 1 *Mass. Rep.* 335.

But if otherwise, is this a cause for a new trial ? The witnesses and the counsel of the appellants have all been heard. Is not the *order* a matter of *discretion,* not subject to revision here ?

2. That the executors, taking no interest under the will, were competent witnesses to establish it. This proposition is abundantly eetablished, by authorities, in *Great Britain* and in this state. *Bettison* v. *Bromley,* 12 *East,* 250. 3 *Stark. Ev.* 1690. *Lowe* v. *Jolliffe,* 1 *Bla. Rep.* 365. 2 *Selw. N. P.* 889. *(Alb. ed.* 1811.) *Goodtitle* v. *Welford, Doug.*139. *Anon.* 1 *Mod.* 197. *Hawley* v. *Brown,* 1 *Root,* 494. The cases of *Durant* v. *Starr,* 11 *Mass. Rep.* 527. and *Sears* v. *Dillingham,* 12 *Mass. Rep.* 338. decided in *Massachusetts,* admit the general principle, that an executor may be a witness to support the will ; but as in that state, he is liable to costs, he was excluded on that ground.

3. That the declarations of the testatrix, not made *at* the time of executing the will, are not evidence, except to shew the state of her mind. If the declarations in question were made *before* the execution of the will, they can have no effect otherwise than to shew the state of her mind, because the will itself is the best evidence of what she intended to do : if made *afterwards,* it is clear, that a will once duly executed, cannot be revoked or altered in this manner. *Smith* v. *Fenner,* 1 *Gal.* 170.

4. That the charge in relation to testamentary capacity, is unexceptionable. A person *non compos mentis* is incapable of making a will or contract, and is not liable to criminal punishment for his acts. The great question to be asked, in such cases, is, was he *in his senses* at that time ? 2 *Swift's Dig.* 361. This is the fair import of the charge.

5. That a mistake in a will as to a legacy, so as to render that bequest inoperative, will not destroy the will. A will may be good in part, and void as to another part. *Wyndham* v. *Chetwynd,* 1 *Burr.* 429. *Phillips* v. *Chamberlaine,* 4 *Ves.* jun. 51. 2 *Swift's Dig.* 98, 9. *White* v. *Bradford,* 4 *Mau. & Selw.* 10.

WILLIAMS, J. A new trial is moved for, first, because the court permitted the appellees to open and close the argument.

The real question to be tried, was, whether there was a valid will; and this question was to be decided in the same manner as if it had not been decided in the court of probate. Those who claimed under the will, must, therefore, take upon themselves the burthen of proof; and they must not only prove, that the will was formally executed, but that the testator was of sound and disposing mind. And the rule is, that where there is a necessity for any proof, on the part of the plaintiff, he ought to begin. *Hodges* v. *Holder,* 3 *Campb.* 366. *Jackson* v. *Hesketh,* 2 *Stark. Rep.* 518. And although where the defendant sets up a new case, he has been allowed to go forward; (*Doe* d. *Corbett* v. *Corbett,* 2 *Stark. Rep.* 368. *Goodtitle* d. *Revett* v. *Braham,* 4 *Term Rep.* 496.) yet where a deed or note is to be proved by the plaintiff, duress, or fraud or mistake is not such a case as will entitle the defendant to open and close. So if the defendant pleads *non assumpsit* to a note, and gives payment in evidence, as the plaintiff goes forward to prove the note, though the case is to turn upon payment, the defendant does not gain the right. *Brooks* v. *Barret,* 7 *Pick.* 100.

But the question has arisen, in *Massachusetts,* upon a will; and it has been repeatedly decided, that those who were to prove the will, went forward. *Buckminster* & al. v. *Perry,* 4 *Mass. Rep.* 593. *Phelps* & al. v. *Hartwell* & al. 1 *Mass. Rep.* 71. *Brooks* v. *Barret,* 7 *Pick.* 94. I cannot doubt, therefore, that this point was rightly decided.

But were it otherwise, it seems not to be a ground for a new trial. It is a matter of practice, founded indeed upon the principle, that he who takes the affirmative assumes the burthen of of proof; yet where there are several issues, or the burthen of proof changes, as it frequently does, in the course of the trial, I think as much discretion must be allowed to the judge, as in case of a motion for a continuance, or for a new trial; and that a mistake here is no more a ground for a new trial, than in those cases. And no case is recollected, in which a new trial was granted, except that in the case cited of *Brooks* v. *Barret,* it is said to have been so adjudged in *Massachusetts.* However it may be in that state, I know of no rule here requiring the court to grant a new trial on that account; and I am not disposed to establish such a rule.

2. It is objected to the decision below, that as the executors had accepted the trust and proved the will, they could not testify; because they are parties, and because they are interested.

*New-London, July, 1830.*

Comstock
*v.*
Hadlyme.

*New-London,*
*July,* 1830.

Comstock
*v.*
Hadlyme.

As to the first objection ; the rule at law is, that the parties on the record cannot be witnesses. But, are the executors parties? They have, indeed, been cited in, to shew cause, if any they have ; but it is merely that they *may* come, not that they *must.* But they do not appear nor plead : they have left the defence to those particularly interested in establishing the will, the society of *Hadlyme.* Besides, the proceedings in cases of this kind, resemble the proceedings in chancery rather than those in a court of law ; particularly, in this process calling upon all interested to come in and defend. And in chancery, it is well settled, that persons who are defendants on the record, if they have no interest, may be witnesses. *Neilson* v. *McDonald,* 6 *Johns. Chan. Rep.* 204. And so at common law, an executor having no interest, or a mere trustee, may be a witness. *Sears* v. *Dillingham,* 12 *Mass. Rep.* 360.

It is said, however, that they are liable to costs. If they are not parties, they are, certainly, not liable. But if they are technically parties, I do not see how they should be liable to costs. In *Massachusetts,* it seems, they are made liable by statute; and therefore, they are not witnesses. But in this state, in the first place, the general practice has been not to tax costs against appellees, in probate cases, where the judgment is reversed. Aside, however, from that practice ; these executors being merely trustees, having no personal interest, can, upon no principle of law or equity, be answerable for costs, because they were called upon to come in and defend the will, if they saw cause, when they have seen no cause, and when they did not choose to come in and defend. The executors have adopted the course, which seems, after the case of *Curtis* v. *Northup, Swift's Ev.* 357. to be the only safe one. They have left the heirs and devisees, the real parties in interest, to carry on the controversy, in which they alone were interested. And surely, they cannot carry it on, at the expense of those who have no manner of interest in it.

It is said, again, that they have an interest in establishing the trust fund ; otherwise, they never can be paid for their services ; and, the above-mentioned case of *Curtis* v. *Northup* is cited. It is believed, that that case does not establish the proposition it is brought to establish. The court do, indeed, there say, that if a testator gives all his estate to one, and makes another his executor, and an heir appeals, as in this case, the executor is not bound to defend, and if he does, and the will

is adjudged void, he must lose the whole, as there is no estate, which he could charge. But a reason is given : it is unjust that he should defend at the expense of the devisee, who had no interest in it. But it does not follow, that the expenses he has incurred, or the services which he has rendered, while in the due performance of his duty, under a will legally proved, shall not be allowed him, as well as the debts he has actually paid. While he acts *bona fide*, under a judgment of the court of probate, he acts legally, and must be entitled to payment of his expenses and a compensation for his services. *Bradford* v. *Boudinot*, 3 *Wash. C. C. Rep.* 122. In the case of *Hayden* & ux. v. *Loomis*, 2 *Root* 350. the executor was excluded ; but the case is so briefly reported that the precise point does not appear. In *Hawley* v. *Brown*, 1 *Root* 494. the executor declined the trust, and his wife was admitted as a witness. These are decisions of the superior court. In *England*, it has been settled, ever since the time of Lord *Hale*, that the executor, not being interested, may be a witness. *Anon.* 1 *Mod.* 107. *Lowe* v. *Jolliffe*, 1 *Bla. Rep.* 365. *Goodtitle* v. *Welford, Doug.* 141. *Bettison* & al. v. *Bromley*, 12 *East* 250. And although the question here arises in a different form from what it does in those cases, the principle is the same ; and in my opinion, the executors had no interest, and ought not to have been excluded from testifying.

3. The next general question is, whether the declarations of the devisor, made about the time of executing her will, tending to shew that she was unduly influenced, ought to have been admitted in evidence. If it was claimed, that those declarations were part of the *res gesta*, the time when made should have been precisely stated : *about the time* is quite too indefinite. It should have been stated to be *at* the time. And if her declarations were not a part of the *res gesta*, I know not upon what principle they can be introduced as evidence of *facts.* Is a will or deed, valid upon the face of it, to be destroyed, or in any way affected, by the declarations of the devisor or grantor? Some strong authority is necessary to support such a proposition. In the case of a deed, it would not be claimed. A will, to be sure, is ambulatory ; and nothing vests, during the life of the devisor. Still, however, it can be altered or revoked only in a legal manner. In *Nelson* v. *Oldfield*, 2 *Vern.* 76. evidence of what the testator said, to prove duress, was admitted ; but no objection appears to have been made ;

New-London,
July, 1830.

Comstock
v.
Hadlyme.

and the court said, the legatee had her probate, and might make what use she could of it, but a court of chancery would not aid her.   In *Jackson* d. *Coe* & al. v. *Kniffen,* 2 *Johns. Rep.* 31. 34.   *Thompson,* J. says : " To permit wills to be defeated, or in any manner whatever impeached, by the parol declarations of the testator, appears to me repugnant to the very genius and spirit of the statute, and not to be allowed."   And in *Smith* v. *Fenner,* 1 *Gal.* 172. it was held, that the declarations before and at the execution of the will, were admissible, but none made after, unless so near the time of the execution as to be a part of the *res gesta,* or necessarily connected with it.   And in *Stevens* v. *Vancleve,* 4 *Wash. C. C. Rep.* 265.   *Washington,* J. says : " The declarations of a party to a deed or will, whether *previous* or subsequent to its execution, are nothing more than hearsay evidence ; and nothing could be more dangerous than the admission of it, to controul the construction of the instrument, or to support or destroy its validity."   And in *Provis* v. *Rowe,* 5 *Bing.* 435.   (15 *Serg. & Lowb.* 490.) where written declarations of the devisor made after his will, were offered in evidence, *Best,* Ch. J. said : " We shall not, for the first time, establish a doctrine, which would render useless the precaution of making a will.   It would be contrary to the first principles of evidence."

In the case on trial, it does not appear, whether the declarations were before or after the execution of the will.   Of course, it is not necessary to determine, whether there is any real difference in the principle.   It is sufficient to say, that if there is any, the fact ought to be shewn to the court, that the declarations were made before the execution of the will, or the party who asks for a new trial, can gain no benefit from that fact.

4. Another objection is to the charge of the court.   The jury were instructed, that if the devisor knew what she was about,—knew the consequences of what she was doing,—if she had sufficient capacity to make any contract,—she might make a valid will.

Upon this subject there may be some difficulty in fixing a standard.   The question for the jury was, whether the devisor had a sound and disposing mind.   Although the charge may not add much to what would occur to the minds of discreet men, on that subject ; yet if no improper direction has been given, I think there should be no new trial.

In *Rambler* v. *Tryon,* 7 *Serg. & Rawle,* 95. and in the case

cited above of *Stevens* v. *Vancleve*, the court say, that the tes- <span style="float:right">*New-London*,</span>
tator may not have sufficient strength of mind and vigour of in- <span style="float:right">July, 1830.</span>
tellect to make and digest all the parts of a contract, and yet be <span style="float:right">Comstock</span>
competent to direct the distribution of his property by will. The <span style="float:right">*v.*</span>
question, says Judge *Washington*, resolves itself into this ; were <span style="float:right">Hadlyme</span>
his mind and memory sufficiently sound to enable him to know
and understand the business in which he was engaged, at the
time when he executed his will. 4 *Wash. C. C. Rep.* 466,7.
And in *Hathorn* v. *King*, 8 *Mass. Rep.* 371. the court said,
that if at the time of executing the will, the testratrix had suffi-
cient discretion for that purpose, and was able to recollect the
particulars which she had dictated, the jury might find her of
sound and disposing mind. I think, therefore, that there is no
ground for a new trial, as it regards the charge.

5. But the most important objection is the omission to insert
the legacy to her grand-children of 100 dollars each. That
the testatrix directed this ; that she supposed it was done, and
that it was not done,—are to be considered as proved, for the
purposes of this motion. It is said, that this omission makes the
will void ; that it shews it was not her will—not the will she
meant to make. Now, if a mistake in drafting a will, makes
it void, it is certainly very surprising that no case has been pro-
duced from an *English* or *American* book, in support of the
proposition, although the various decisions relative to the con-
struction of the statute of frauds, would fill volumes. It can-
not be believed but that similar mistakes have been often made.

The statute, when it required all wills to be in writing, signed
by the testator and attested by witnesses, certainly intended,
that the evidence, and the whole evidence, of the disposition of
property by will, should be the will itself; that the evidence of
the intent of the devisor should be derived from the writing,
signed by him and solemnly attested ; otherwise, innumerable
would be the cases, where evidence of mistake would be
claimed and proved. To use the language of Ch. J. *Best*, in
the case before cited, some witness would constantly be brought
forward to set aside the most solemn instrument. 5 *Bing.* 435.

How often is it, that the words used by the scrivener convey
a different estate from what the testator designed ! Yet it has
always been decided, that parol testimony could not be admit-
ted to prove, that the devisor meant to give a different estate
from what the will expressed. *Chappel* v. *Avery*, 6 *Conn. Rep.*
34. *Farrer* v. *Ayres*, 5 *Pick.* 407. It is, says Lord *Kenyon*,

*New-London,* a sacred rule of property not to be departed from. *Goodtitle* July, 1830. d. *Richardson* v. *Edmonds,* 7 *Term Rep.* 635. 640. *Richards* v. *Dutch* & al. 8 *Mass. Rep.* 506. 515. And if it is settled, that you cannot, by parol proof, alter the legal import of the terms used by the scrivener, such a will must either be void, or convey a different estate from the one intended. That such a will is not void, is proved, by repeated declarations of judges, that by the legal construction, they knew that the intent of the testator was frequently violated. *Doug.* 763. 1 *Brod. & Bing.* 261. n. *Cowp.* 660.

Comstock
*v.*
Hadlyme.

If by the construction given to the words used, the intent may be defeated, and yet the will remain valid, why shall not the same effect follow where it arises from an omission to insert certain words which were intended? In neither case, is the effect of the will exactly what the testator intended; but in neither case, can the fact be ascertained, without the aid of parol testimony; and if such testimony is to be admitted, we do away part at least of the beneficial effect of the statute of frauds, and leave every will exposed to litigation, on a claim of a different intent. In contracts, mistakes have, indeed, been *rectified,* in a court of chancery; but no case is recollected, where they have been holden *void,* on account of a mistake. In *Philips* v. *Chamberlaine,* 4 *Ves.* jun. 51. 57. where an intention was expressed to give a legacy to the *Humane Society,* but no sum was inserted, the will was not held to be void. And it would seem, that in this case, if any remedy existed, it would be one that would not destroy the whole will, but one which would correct the mistake, and make it what it ought to be. That has been attempted, in a recent case; and it was decided, that parol testimony could not be admitted to prove the mistake. It would be to make a will by witnesses, and not by writing; to make a will any thing. *Avery* & ux. v. *Chappel* & al. 6 *Conn. Rep.* 270. 275. And if such evidence cannot be admitted, in chancery, to prove a mistake in a will, where is the principle, or where the authority, that such evidence can be admitted to render the will void? Can courts of law dispense with rules of evidence more readily than courts of chancery? Or, is the obligation imposed upon them, by statute, less imperative?

The general rule is, that courts of law and chancery proceed upon the same principle as to admitting parol testimony; and it is certainly a novel idea, that courts of chancery are less liberal, on that subject, than courts of law. I think, then, it follows,

New-London,
July, 1830.

Comstock
v.
Hadlyme.

that if courts of chancery cannot admit such evidence to prove a mistake, which they might correct, courts of law cannot admit it to prove a mistake to set aside the will. The danger arising from the nature of the proof, is the same in both cases; and if the rules of law would allow that proof, it would be more congenial to principle, and more likely to effectuate the intent of the devisor, to correct the mistake, than to make void the whole instrument. And if the former cannot be done, much less can the latter.

The only authority cited is *Downhall* v. *Catesby, Moore* 356. referred to in 1 *Swift's Dig.* 141. and in *Powell.* In that case, it appears, that the testator directed the scrivener to give an estate to one of his sons *for life,* and he gave it *in fee.* The court agreed, that the will was entirely void, it not being the will of the testator; though *Fenner,* J. held, that it might convey an estate for life. That decision was made under the statute of *Hen.* viii., when a laxity was allowed with respect to wills, which produced evils, that gave rise to the statute of frauds. Under the first statute, a letter was held to be a writing within the statute. *West's* case, *Moore* 177. So a will made by a lawyer from notes taken by him from the mouth of the deceased, was held good, though never read to him. *Brown* v. *Sackville,* 1 *Dyer* 72. *a.* And a scrap of writing, though not signed, sealed or written, by the devisor, if established by one witness, and he a legatee who had released his interest, has been held good. *Stephens* v. *Gerrard,* 1 *Sid.* 315. But this solitary case is said to be contradicted in *Co. Ent.* 252.

If, however, it is admitted, that it was once law, it will no more prove, that such ought to be the construction of our statute regarding devises, than the rules of the feudal system would prove the doctrine of primogeniture now to exist in *Connecticut.* And the fact that no case is found since the statute of 29 *Car.* ii. is strong, if not conclusive evidence, that such has not been the construction.

I am, therefore, of opinion, that there ought not to be a new trial.

The other Judges were of the same opinion.

**New trial not to be granted.**