ANN CROWNINSHIELD & others *vs.* GEORGE CROWNINSHIELD.

The burden of proving the sanity of a testator, under the statutes of this commonwealth, is upon him who offers the will for probate; and does not shift upon evidence of his sanity being given by the subscribing witnesses.

*It seems*, that, under the statutes of this commonwealth, there is no presumption in favor of the sanity of a testator.

APPEAL by the heirs at law of Edward Crowninshield, deceased, from a decree of the judge of probate, allowing the probate of his will. Trial before *Bigelow*, J. by whose direction the following issue to a jury was framed : The appellee, who was the executor named in said will, pleaded " that the said Edward Crowninshield, at the time of executing the said paper writing, was a person of sound and disposing mind ; and this he is ready to verify." The appellants replied " that they deny that, at the time of executing the aforesaid paper writing, the said Edward Crowninshield was a person of sound and disposing mind, in manner and form as by the said appellee is above alleged ; and of this they put themselves on the country." And the appellee joined the issue.

" The appellants proved that, at the time of making and executing said instrument, the said Edward Crowninshield was under guardianship by a decree of the judge of probate, as an insane person, being a person *non compos mentis.* The court instructed the jury that the burden of proof, in a case of this kind, when the supposed testator was under guardianship as an insane person at the time of making and executing the alleged will, was upon the party propounding the will, to show that the supposed

testator was at that time of sufficient mental capacity to make and execute said will. The verdict of the jury was that, at the time of making the instrument propounded for probate, the said Edward Crowninshield was not of sound and disposing mind and memory. If this instruction on the burden of proof was erroneous, the verdict is to be set aside; otherwise, a decree is to be entered, disallowing the instrument propounded for pro· bate as the last will of said Edward Crowninshield."

*O. P. Lord & S. C. Bancroft,* for the appellee. Where the probate of a will is resisted on the ground that the alleged tes- tator was not of sound and disposing mind, the burden of proof is always on the party opposing the will. *Brooks* v. *Barrett,* 7 Pick. 94. *White* v. *Wilson,* 13 Ves. 87. 6 Cruise Dig. (Greenl ed.) tit. 38, *c.* 2, § 7 *& note.* And this is in accordance with the rule established by this court, in all cases, whether affecting prop- erty or life, that every person is presumed to be sane, till the contrary is shown; and the burden of proof is upon the party alleging insanity. Even in a capital case, the evidence of in- sanity must preponderate. *Commonwealth* v. *Rogers,* 7 Met. 500. A person may not be in a state of mind to manage the ordinary affairs of life, and yet may retain sufficient men- tal capacity to make a will. The order of the judge of pro- bate, putting him under guardianship, is not a judgment of the fact of insanity; but only a piece of evidence tending to prove his incapacity to make a will. But the burden of proving insanity rests throughout on the party opposing the will. The production of evidence strongly tending to prove insanity may satisfy, but it does not change, the burden of proof. *Breed* v. *Pratt,* 18 Pick. 115. *Powers* v. *Russell,* 13 Pick. 77. *Tourtellot* v. *Rosebrook,* 11 Met. 460. *Delano* v. *Bartlett,* 6 Cush. 364.

*S. H. Phillips,* for the appellants. On principle, if this case were not embarrassed by the decision of this court in *Brooks* v. *Barrett,* 7 Pick. 94, it might be said that the question, whether an alleged testator was competent to make a will, was a single issue; and that upon this issue the party who alleged the sanity of the testator had the affirmative, and consequently the burden of proof. But, admitting it to be settled by *Brooks* v. *Barrett,*

as a general rule, that the burden of proof is on the party impeaching the sanity of the testator; yet the fact that the supposed testator, at the time of executing the alleged will, was under guardianship as an insane person, takes the case out of that rule, and casts the burden of proof upon the party propounding the will, to show that the testator had sufficient mental capacity to make it. *Breed* v. *Pratt*, 18 Pick. 117. *White* v. *Palmer*, 4 Mass. 149. *Stone* v. *Damon*, 12 Mass. 488.

THOMAS, J. This case is before us on the report of the presiding judge. At the time of the execution of the instrument offered for probate, the testator was under guardianship, as an insane person. The presiding judge ruled that, under this state of facts, the burden of proof was upon the party seeking probate of the will, to show that, at the time of its execution, the testator was of sound mind. The verdict was that the testator was of unsound mind. If the ruling of the presiding judge was erroneous, the verdict is to be set aside; if right, judgment is to be entered on the verdict.

When one dies owning real or personal estate, the law fixes its descent and distribution. Under certain conditions, however, it gives to such owner the power to make a disposition of his property, to take effect after his death. This is done by a last will and testament. To make such will, certain capacities are requisite in the maker, and certain formalities for its due execution.

The capacities of the maker are prescribed by the Rev. Sts. *c.* 62, §§ 1, 5. " Every person of full age and of sound mind, being seized in his own right of any lands, &c. may devise and dispose of the same by his last will and testament in writing." " Every person of full age and of sound mind may, by his last will and testament in writing, bequeath and dispose of all his personal estate, remaining at his decease, and, all his right thereto and interest therein."

The formalities are prescribed by the sixth section of the same chapter. " No will, excepting nuncupative wills, shall be effectual to pass any estate, whether real or personal, nor to charge, or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express

direction, and attested and subscribed, in the presence of the testator, by three or more competent witnesses."

When, therefore, a will is offered for probate, to establish it, to entitle. it to such probate, it must be shown that the supposed testator had the requisite legal capacities to make the will, to wit, that he was of full age and of sound mind, and that in the making of it the requisite formalities have been observed. The heirs at law rest securely upon the statutes of descents and distribution, until some legal act has been done by which their rights under the statutes have been lost or impaired.

Upon whom, then, is the affirmative? The party offering the will for probate says, in effect, This instrument was executed with the requisite formalities by one of full age and of sound mind; and he must prove it; and this is to be done, not by showing merely that the instrument was in writing, that it bears the signature of the deceased, and that it was attested in his presence by three witnesses; but also that it was signed by one capable of being a testator, one to whom the law had given the power of making disposition of his property by will.

This is the doctrine of the earliest case upon the subject in our reports. *Phelps* v. *Hartwell,* 1 Mass. 71. It was there argued by the appellees that the burden of proof was with the appellants, opposing the will; and that it was incumbent on them to show that the testator was not of sound mind at the time of the making of the will. " But the whole court held that the rule was the same in this case as in all others. The burden of proof is always with those who take the affirmative in pleading. Here the appellees have the affirmative, and must therefore produce reasonable and satisfactory evidence to the jury that the testator was sane at the time of making the will." In *Blaney* v. *Sargeant,* in the same volume, it was held that the party wishing to establish the will, having the affirmative, was entitled to the opening and close. 1 Mass. 335. And such has been the uniform practice of this court.

These cases but recognize and confirm a familiar and well settled rule of pleading, as of logic, that he who affirms the existence of a given state of facts must prove it. There may be

different modes and instrumentalities of proof; but the burden
is on him who affirms, and not on him who denies.

The doctrine of the case of *Brooks* v. *Barrett,* 7 Pick. 94, is
doubtless, to some extent, in conflict with that of the earlier cases;
and so it is, also, with that of the later; and as much of the
confusion existing upon this subject may have arisen from that
case, it may be well to examine it with some care.

In that case, as in *Phelps* v. *Hartwell* and *Blaney* v. *Sargeant,*
it was held that the opening and close were with the executor,
as the affirmative was with him.   It was also said that " by our
statute of wills, all such instruments must be offered for proof
in the probate office, and the subscribing witnesses are to be
there produced ; and these witnesses are to testify, not only as
to the execution of the will, but as to the state of mind of the
testator at the time.   Without such proof, no will can be set up
And this agrees with the English law on the same subject."
Thus far the case is in harmony with the earlier ones.   The affirm-
ative is upon the executor, and he is to produce the statute evi-
dence to show not only the execution of the instrument, but
" the state of the mind of the testator at the time," that is, of
course, that it was in a sound state, capable of making a will ;
and, without such proof, no will can be set up.   " Upon an ap-
peal from the decree of the judge of probate, allowing or reject-
ing the will, it is to be proved in the appellate court, in the same
manner as if first offered there for probate."   The issue of san-
ity, however, in this court, is to the jury, and not to the presid-
ing judge.   Rev. Sts. *c.* 62, § 16.   The party, then, offering the
will in this court for probate, is to produce the attesting wit-
nesses to show the soundness of the testator's mind at the time
of the execution of the will.   Thus far all is plain.

But the court proceeded to say : " Being proved, however, by
the subscribing witnesses, both as to its execution and the san-
ity of the testator, the will is to be set up and allowed, unless
the party objecting disproves the facts thus established.   So that
the burden of proof shifts from the executor to the heir or other
person opposing the allowance of the will; but in this, as in
all cases where there is an affirmative point to be made out

by one party, he is to open and close to the jury. If his own evidence, that of the subscribing witnesses, is deficient, he is to make out the affirmative from the whole case. If he makes out his case by the statute evidence, he has only to defend against the proof of insanity produced by the other party. And having produced the statute evidence, if the case is made doubtful by the evidence from the other side, the presumption of law in favor of sanity must have its effect in the final decision." And the court added : " The will having been sufficiently proved by the statute evidence, it was also rightly decided that the burden of proof in regard to insanity was upon the other party."

We can perceive here no shifting of the burden of proof ; the issue throughout is but one : Was the testator of sound mind ? And the affirmative of this was upon the party offering the will for probate. Again ; that issue is an issue of fact, and is to the jury. And how is the court to determine when the will is " proved " or " sufficiently proved " by the subscribing witnesses, " so that the burden of proof shifts from the executor to the heir ? " It is a question of the effect of evidence, and could only be solved by probing the mind of each juror. Suppose the attesting witnesses are divided in opinion ; one for the sanity of the testator, one against, the other doubtful ; or that two testify against the sanity of the testator, and the third that he was of sound mind, and the jury place greater confidence in the means of observation, intelligence, judgment and integrity of the one than of the other two ; or that all three testify (a case not without precedent), so far as it is matter of opinion, in favor of the sanity of the testator, yet, in view of all the facts and the circumstances detailed by the same witnesses, the jury reach a very different conclusion. If there could be a shifting of the burden upon a single issue, it would be impossible to tell when the burden is to be transferred from the one party to the other.

It is quite difficult to understand what was meant by the court when they said, that " if he [the executor] makes out his case by the statute evidence, he has only to defend against the proof of insanity produced by the other party." The law has made no further distinction between the attesting and other wit-

nesses, than that the opinions of the former may be given in evidence; and even this distinction does not extend to professional witnesses. If the three attesting witnesses, being comparative strangers to the testator, and called in for the mere purpose of witnessing the will, testify that, so far as they saw, the testator was of sound mind; and the attending physicians, familiar with the facts and with the history of the party, testify that he was insane; the law attaches no peculiar weight to the testimony of the former as against the latter. Still less does it give it any such preponderance as to shift the burden of proof. The issue, after the evidence is all in, is precisely the same that it was at the beginning — Was the testator of sound mind? — an issue in its very nature incapable of division.

If the court were to instruct the jury in the first place to examine and weigh by itself the testimony of the subscribing witnesses, and that, if they should find it sufficient, the burden of proof would shift upon those opposing the will, but, if deficient, it would remain with the executor, it would be compelling them to try the case twice; first, to learn where the burden of proof was, and then where the truth was; and they might be wholly unable to agree as to the weight to be given to the testimony of the subscribing witnesses, though they concurred in the result of the testimony as a whole. It not unfrequently occurs, in contested questions of sanity, that, when the evidence is all in, very little importance attaches to the testimony of the subscribing witnesses; because, from want of intelligence or opportunities of observation, they know very little of the matters in issue.

Nor, though the concurring testimony of the subscribing witnesses may make a *prima facie* case, is there any shifting of the burden of proof. The burden of proof does not shift when a *prima facie* case is made out. The remarks of Mr. Chief Justice Parker on this point, in the case we are considering, have not the usual discrimination of that most able and excellent judge. "The shifting of the *onus probandi*," he says, "is quite familiar in the course of trials. In a suit upon a promissory note or other written contract, the plaintiff produces his note, proves the signature of the defendant, and stops; the defendant alleges

payment, want of consideration, or other matter in defence, the burden of proof is upon him, and yet the plaintiff opens and closes the argument."

Things quite distinct are here confounded; want of consideration and payment. Without a consideration there is no contract. The question, therefore, whether there was a consideration, is but a form of the question whether a contract was ever made. The burden does not shift. The production of the note, with the signature of the defendant, makes a *prima facie* case against him; and when no evidence is offered to the contrary, the plaintiff will of course prevail. But when evidence is offered by the defendant, and, it may be, in reply by the plaintiff, it all applies to one and the same issue — Was there a consideration? if not, there was no contract. And the burden remains throughout upon him who affirms that a contract was made. This is now well settled. *Tourtellot* v. *Rosebrook*, 11 Met. 460. *Delano* v. *Bartlett*, 6 Cush. 364.

But the plea of payment raises a new and distinct issue. It confesses the original contract, and seeks to avoid it. It affirms a subsequent independent fact, the fact of payment, and he who affirms it must prove it. It is a new issue made by the defendant. The burden is on him. And if he fails to prove his averment, and the plaintiff has proved his, the result is that the contract is proved, but its performance or discharge is not proved, and the plaintiff recovers. And see *Powers* v. *Russell*, 13 Pick. 69.

The ground taken by the counsel of the appellees is, that every man is presumed to be sane till the contrary is shown, and that the burden is cast upon those who impeach the sanity.

If such presumption exists at all in respect to wills, it does not apply to the case of one under guardianship, as an insane person. Such guardianship is *prima facie* evidence of insanity. *Stone* v. *Damon*, 12 Mass. 488. *Breed* v. *Pratt*, 18 Pick. 115.

Nor does the existence of a general presumption that men are sane change the burden of proof. It may stand in the stead of proof; it may make a *prima facie* case; where the question of sanity is made, it may render necessary greater weight of

evidence in him who seeks to impeach it; but it does not change the burden of proof. But when the evidence is in, on the one side and the other, the issue still continues as before; and he, to whose case the proof of such sanity is necessary, has the burden. To use the language of the court in *Powers* v. *Russell* : " Where the proof on both sides applies to one and the same proposition of fact, the party, whose case requires the proof of that fact, has all along the burden of proof; though the weight in either scale may at times preponderate." 13 Pick. 76.

But we are by no means satisfied that, in relation to wills, there is any legal presumption, in this commonwealth, of the sanity of the testator. If such presumption exists, no proof that the testator was of sound mind would be necessary, until those opposing the will had offered some evidence to impeach it. The presumption of sanity would be sufficient, until there was something to meet it. Yet our cases uniformly hold that the party seeking probate of the will must produce the attesting witnesses to show not merely the execution of the instrument, but the sanity of the testator at the time of its execution. *Phelps* v. *Hartwell*, *Blaney* v. *Sargeant*, and *Barrett* v. *Brooks*, above cited. *Buckminster* v. *Perry*, 4 Mass. 593. And such has been, we think, the uniform practice in the probate courts, and in this court sitting as the supreme court of probate. These cases were decided, and this practice grew up, under the explicit language of the *St.* of 1783, *c.* 24, § 1, which provided that " every person lawfully seized of any lands, &c., of the age of twenty one years and upwards, and of sane mind, shall have power to give, dispose of and devise the same." The language of the Revised Statutes is to the same effect: " Every person of full age and of sound mind." Rev. Sts. *c.* 62, §§ 1, 5.

There are strong reasons why the same presumption as to sanity should not attach to wills as to deeds and ordinary contracts. Wills are supposed to be made *in extremis*. In point of fact, a large proportion of them are made when the mind is to some extent enfeebled by sickness or old age. It is for this reason, that the execution of the will and the proof of its execution are invested with more solemnity; the statute requiring it

to be attested by three or more competent witnesses; making void all beneficial devises, legacies or gifts to such subscribing witnesses; and requiring the presence of the three in the probate court for its proof, unless it appears by consent in writing of the heirs at law, or other satisfactory evidence, that no person interested intends to object to the probate of the will. Rev. Sts. *c.* 62, §§ 6, 8, 15. We speak of what seems to be the rule in this commonwealth, under the *St.* of 1783, *c.* 24, and the Rev. Sts. *c.* 62.

There is, no doubt, both conflict and confusion in the authorities on this point, both in England and in this country. A general legal presumption doubtless exists, that a man is sane, till there is evidence to the contrary; and upon proof of the execution of a contract, or of a deed, no proof need be given that the maker was of sound mind when he executed it. The presumption is sufficient, until evidence is produced to meet it. This presumption has often been applied to the proof of wills, but not in our own courts. Nor is the rule elsewhere uniform.

In the case of *Gerrish* v. *Nason,* 22 Maine, 441, the court say . " The presumption, that the person making the will was at the time sane, is not the same as in the case of the making of other instruments; but the sanity must be proved."

In *Comstock* v. *Hadlyme,* 8 Conn. 261, the court say : " Those who claim under the will must take upon themselves the burden of proof; and they must not only prove that the will was formally executed, but that the testator was of sound and disposing mind."

In the recent case of *Barry* v. *Butlin,* before the Judicial Committee of the Privy Council, Mr. Baron Parke, in pronouncing the judgment, says : " The rules of law, according to which cases of this nature are to be decided, do not admit of any dispute, so far as they are necessary to the determination of the present appeal; and they have been acquiesced in on both sides. These rules are two; the first, that the *onus probandi* lies in every case upon the party propounding a will; and he must satisfy the conscience of the court that the instrument so propounded is the last will of a free and capable testator." 1 Curt Eccl. 638.

45 *

If there were uniformity in the English decisions, which there certainly is not, we should not overlook the difference between the English statute of wills, 34 H. 8, *c.* 5, and our own. Our own provides that " every person of full age and of sound mind " may make a will; making these capacities, of full age and sanity, of the nature of conditions precedent. The *St.* of H. 8 enacts, in § 4, that " all and singular person or persons having estate or interest in fee simple, &c. in lands, &c. shall have full and free liberty, to give, dispose, will or devise to any person or persons, &c. by his last will and testament in writing, as much as in him of right is or shall be, his said lands, &c. at his own free will and pleasure;" and then, by § 14, provides that "wills or testaments made of any lands, &c. by any woman covert, or person within the age of twenty one years, or by any person *de non sane* memory, shall not be taken to be good or effectual in the law;" thus making, in the first place, a general provision applicable to all persons whatsoever, and then excepting out of its operation, and making ineffectual, wills of persons of non-sane memory. If, therefore, it were the uniform construction of this statute that when a will was produced, and its due execution proved, it was to be taken to be good and effectual, unless for some of the causes stated in the fourteenth section it was shown not to be good or effectual, it would furnish no precedent for the construction of our own statute, which in terms limits the power to persons of full age and sound mind.

On the whole matter, we are of opinion, that where a will is offered for probate, the burden of proof, in this commonwealth, is on the executor or other person seeking such probate, to show that the testator was, at the time of its execution, of sound mind; that if the general presumption of sanity, applicable to other contracts, is to be applied to wills, it does not change the burden of proof; that the burden of proof does not shift in the progress of the trial, the issue throughout being one and the same; and that if, upon the whole evidence, it is left uncertain whether the testator was of sound mind or not, then it is left uncertain whether there was under the statute a person capable of making the will, and the will cannot be proved.

*Judgment on the verdict.*